IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SUPERIOR      PERFORMERS,      INC.  )
d/b/a      NATIONAL      AGENTS  )
ALLIANCE,                                    )
                                              )
              Plaintiff,            )
                                              )
          v.                        )          1:20-cv-00123
                                              )
JASON  J.  THORNTON,  DORIAN  K.  )
SAUNDERS,  WILLIAM  N.  SAUNDERS,  )
GLENN   A.   LAMB,   SHONDEL   A.  )
FERGUSION,  and  SANSON  GARZA,  )
                                              )
              Defendants.           )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

     Before the court are two motions: Defendants Glenn A. Lamb,

Dorian K. Saunders, William N. Saunders, and Shondel A. Ferguson

move to set aside entry of default (Doc. 30),[1] and Plaintiff

Superior Performers, Inc. ("Superior Performers") moves for

default judgment against Defendants Lamb, D. Saunders, W.

Saunders, Ferguson, and Sanson Garza (Doc. 34). Superior

Performers replied in opposition to Defendants' motion to set aside

---

[1] Defendants' motion to set aside entry of default (Doc. 30) and original
memorandum in support (Doc. 31) indicate that only Lamb, D. Saunders,
and W. Saunders have joined the motion. However, after Ferguson retained
the same counsel as Lamb, D. Saunders, and W. Saunders, Defendants filed
a corrected memorandum in support which indicates Ferguson has joined
the memorandum. (Doc. 33.) As defaults are disfavored and should be
avoided where possible, Reynolds Innovations, Inc. v. E-Cigarette
Direct, LLC, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012), the court
construes Ferguson's filing as joining Defendants' motion to set aside
entry of default. Defendant Sanson Garza has not joined the present
motion or otherwise challenged the entry of default against him.

entry of default. (Doc. 39.) Defendants replied in opposition to Superior Performers' motion for default judgment. (Doc. 44.) For the reasons set forth below, Defendants' motion to set aside entry of default will be granted and Superior Performers' motion for default judgment will be denied.

## I. BACKGROUND

The basic facts alleged in the complaint, as relevant to the motions before the court, are as follows:

Superior Performers recruits and trains sales agents for various insurance companies. (Doc. 28 ¶¶ 9, 10.) Defendants, through their business relationships with Superior Performers, were each party to an Agent Agreement with Superior Performers ("the agreement"). (Id. ¶ 18.) The agreement contained various provisions that prohibited Defendants from soliciting the employment or services of any of Superior Performers' agents or employees and from disclosing or using Superior Performers' confidential information for their own purposes. (Id. ¶¶ 20, 21.) Superior Performers alleges that Defendants have breached these provisions of the agreement as part of a conspiracy to recruit away Superior Performers' agents and employees. (Id. ¶ 22.)

On December 20, 2019, Superior Performers brought this action in North Carolina state court. (Doc. 1-1.) On February 10, 2020, following the dismissal of non-diverse parties and with the consent of the remaining Defendants, Defendant Jason Thornton removed the

2

action to this court.[2]  (Doc. 1.)

Following removal, Defendants Lamb, D. Saunders, W. Saunders, Ferguson, and Garza — at the time, proceeding *pro se* — failed to answer or otherwise plead within the seven-day limit of Federal Rule of Civil Procedure 81(c).  (Doc. 12.)  On February 19, 2020, Superior Performers filed for entry of default against these Defendants.  (<u>Id.</u>)  On February 24, 2020, the clerk entered default.  (<u>Id.</u>)

On March 13, 2020, Defendants Lamb, D. Saunders, and W. Saunders retained counsel.  (Doc. 21.)  On April 16, 2020, these Defendants moved to set aside entry of default.  (Doc. 30.)  On April 21, 2020, Defendant Ferguson retained counsel (Doc. 32) and joined Defendants' corrected memorandum in support of the motion to set aside entry of default (Doc. 33).  Superior Performers responded in opposition and, on May 5, 2020, moved for default judgment.  (Docs. 34, 39.)  Defendants Lamb, D. Saunders, W. Saunders, and Ferguson responded in opposition.  (Doc. 44.)  The issues are now fully briefed and ready for resolution.

## II.  ANALYSIS

### A.  Motion to Set Aside Entry of Default

A "court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  "When deciding whether to set aside an

---

[2] All claims against Defendant Thornton were voluntarily dismissed on September 15, 2020.  (Doc. 47.)

entry of default, a district court should consider [1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the [non-moving] party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citing Payne ex. Rel. Est. of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006); see also United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). Although a court has discretion whether to set aside an entry of default, there is a "strong preference that . . . defaults be avoided and that claims and defenses be disposed of on their merits." Reynolds Innovations, Inc. v. E-Cigarette Direct, LLC, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012) (citing Colleton Preparatory, 616 F.3d at 417). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so the case may be heard on the merits." USF Ins. Co. v. Bullins Painting, Inc., No. 1:11CV410, 2012 WL 4462004, at *1 (M.D.N.C. Sept. 25, 2012) (quoting Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969)).

With these principles in mind, the court will address the relevant factors to determine whether entry of default should be set aside.

First, Superior Performers argues that Defendants have failed

4

to allege a meritorious defense.  Superior Performers contends that although Defendants claim that there is no factual basis for Superior Performers' suit against them (Doc. 33 at 3-5), Defendants' failure to provide any evidence in support of those claims constitutes a failure to allege a meritorious defense.

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim. 'The underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default.'" <u>Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.</u>, 843 F.2d 808, 812 (4th Cir. 1988) (internal citations omitted).  As such, Defendants must provide "a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for [them]." <u>Moradi</u>, 673 F.2d at 727. "The defaulting party 'is not required to establish a meritorious defense by a preponderance of the evidence[;] . . . the mere assertion of facts constituting a meritorious defense' may suffice." <u>Terry v. Swift Trans.</u>, No. 1:16CV256, 2017 WL 4236923, at *3 (M.D.N.C. Sept. 22, 2017) (citing <u>Cent. Operating Co. v. Util. Workers of Am., AFL-CIO</u>, 491 F.2d 245, 252 n.8 (4th Cir. 1974)).

It is not clear here, as a matter of law, whether Defendants' defenses will be meritorious.  The matter requires further factual

5

development and legal analysis best performed following an opportunity for both sides to engage in discovery. While Defendants have not proffered any evidence to demonstrate a meritorious defense and it would be more helpful had Defendants actually filed their answers to the complaint,[3] Defendants' memorandum asserts their affirmative defenses, primarily arguing that Superior Performers' claims against them are baseless. (Doc. 33 at 3-5.) As stated in Augusta Fiberglass, the primary concern under this factor is that there is a possibility that the outcome of a trial on the merits would reach a result inconsistent with the result of default. 843 F.2d at 812. With that in mind, this factor weighs neither in favor of, nor against, setting aside entry of default. See Solis v. Hickman, No. 11-279, 2012 WL 263461, at *2 (M.D.N.C. Jan. 30, 2012) (finding this factor to weigh neither for nor against setting aside entry of default where defaulting party's answer "consist[ed] of little more than a page of primarily single-word or single-sentence responses"); Bullins Painting, 2012 WL 4462004, at *2 (finding the factor to be "at worst neutral"

---

[3] An answer, although perhaps helpful, is not required. See, e.g., Armstrong Mktg. v. S. Sols. Produce, LLC, No. 1:06CV174, 2008 WL 11468226, at *3 (M.D.N.C. Apr. 22, 2008) (assertions contained in defendant's motion to set aside default were sufficient to allege a meritorious defense even though pro se defendant did not file a proposed answer); Tietex Interiors v. Am. Furniture Mfg., Inc., No. 1:06CV503, 2008 WL 906318, at *6 (M.D.N.C. Apr. 1, 2008) (statements made by defendants' counsel at hearing on motion to set aside default were sufficient, even though defendants failed to file an answer or to assert any meritorious defenses in their motion to set aside).

6

where evidence was not sufficient to support a defense, but sufficient to establish the defense was "not wholly futile"); Thompson-Knuckles v. Thompson, No. 2:18-CV-1410, 2019 WL 691405, at *2 (S.D. W. Va. Feb. 19, 2019) (finding the factor to weigh neither in favor nor against setting aside default where defendant's answer asserted several affirmative defenses).

As to the second factor, whether a party has taken reasonably prompt action to set aside an entry of default "must be gauged in light of the facts and circumstances of each occasion." Moradi, 673 F.2d at 727. Here, Defendants were first served with the summons and complaint between December 22 and 24, 2019. (Doc. 39 at 9; Docs. 14-1-4.) On February 10, 2020, with Defendants' consent, the action was removed to this court. (Doc. 39 at 9; Doc. 1.) After removal, Defendants — proceeding *pro se* at the time — failed to file a response within the seven-day limitation and default was entered against them on February 24, 2020. (Doc. 15.) Defendants retained counsel on March 13, 2020 (Doc. 21) and, through counsel, filed the present motion to set aside entry of default on April 16, 2020 (Doc. 30). Ultimately, Defendants filed the present motion less than two months following entry of default and before Superior Performers moved for default judgment. This period of time constitutes reasonable promptness. See Bullins Painting, 2012 WL 4462004, at * 2 (finding reasonably prompt action where defendant first consulted an attorney two months after

7

default was entered and attorney moved to set aside default approximately one month after plaintiff filed motion for default judgment); Vick v. Wong, 263 F.R.D. 325, 330 (E.D. Va. 2009) (finding reasonably prompt action where defendant did not respond for more than two months after clerk entered default, but responded a few weeks after plaintiff filed motion for entry of default judgment).  As such, the second factor weighs in favor of setting aside entry of default.

Third, in determining the responsibility of the party for the default, the Fourth Circuit focuses on the source of the default. "When the party is blameless and the attorney is at fault . . . a default judgment should ordinarily be set aside." Augusta Fiberglass, 843 F.2d at 811.  However, where the party's own action or inaction is the source of the default, this factor weighs against setting aside entry of default.  Id.  Here, there is no dispute that Defendants, proceeding *pro se* at the time of default, are personally responsible for the default. (See Doc. 33 at 6, 7; Doc. 39 at 10.)  As such, the third factor weighs against setting aside entry of default.

Fourth, in determining whether a plaintiff would be prejudiced if the entry of default were set aside, "delay in and of itself does not constitute prejudice to the opposing party." Colleton Preparatory, 616 F.3d at 418.  "[N]o prejudice accrues from 'los[ing] a quick [default-based] victory.'"  United States

8

v. Manriques, No. 1:10cr440, 2013 WL 5592191, at *5 (M.D.N.C. Oct. 10, 2013) (quoting Augusta Fiberglass, 843 F.2d at 812) (alterations in original).  "[N]o cognizable prejudice inheres in requiring a plaintiff to prove a defendant's liability, a burden every plaintiff assumes in every civil action filed in every federal court." Colleton Preparatory, 616 F.3d at 419.  Courts instead consider whether prejudice was incurred due to issues such as "[a] missing witness in the case whose testimony was made unavailable by the delay, . . . any records made unavailable by the delay, . . . [or] any evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 952 (4th Cir. 1987).  Here, Superior Performers argues it would suffer prejudice in the form of increased attorneys' fees. (Doc. 39 at 10, 11.)  This alone does not constitute prejudice such that entry of default should be maintained.  See Carter v. City of High Point, No. 1:17CV148, 2017 WL 4043751, at *4 (M.D.N.C. Sept. 12, 2017) (increased expenses not sufficient prejudice to justify maintaining entry of default); Tietex Interiors v. Am. Furniture Mfg., Inc., No. 1:06CV503, 2008 WL 906318, at *6-7 (M.D.N.C. Apr. 1, 2008) (same).  Therefore, the fourth factor weighs in favor of setting aside entry of default.

As to the fifth factor, the Fourth Circuit generally examines a party's "history of dilatory action" apart from the delay causing

9

the default itself. See, e.g., Colleton Preparatory, 616 F.3d at 418. Here, while Defendants were certainly dilatory in their response to Superior Performers' entry of default, the record contains no evidence of any other dilatory conduct with regards to this suit. Therefore, the fifth factor weighs in favor of setting aside entry of default.

Lastly, it has not been disputed that less drastic sanctions, such as awarding Superior Performers certain attorneys' fees, could be available. (See Doc. 39 at 11; Doc. 33 at 8, 9.) As such, the sixth factor weighs in favor of setting aside entry of default.

In sum, four of the factors used to assess a movant's "good cause" under Rule 55(c) weigh in favor of setting aside entry of default, one weighs against it, and one is neutral. On balance, the court finds that good cause exists to set aside the entry of default against Defendants.

Superior Performers has requested that the court condition the setting aside of default on Defendants' payment of Superior Performers' legal fees incurred in seeking default. (Doc. 39 at 12, 13.) No doubt, Superior Performers has suffered some prejudice by incurring the additional expense of obtaining an entry of default. However, at least some of the additional expense was incurred because Superior Performers elected to seek default judgment despite knowing that Defendants had retained counsel and

10

had already filed a motion to set aside entry of default. Therefore, the court will award Superior Performers its reasonable attorneys' fees and expenses incurred in connection with seeking entry of default. Tietex, 2009 WL 906318, at *7 ("[C]ourts possess the 'inherent power' to impose reasonable conditions on relief from a default ... includ[ing] the authority to condition relief from default on payment of the opposing party's attorneys' fees and costs incurred in securing the entry of a default." (internal citation omitted)). The court declines to award any fees or expenses in connection with the motion for default judgment. See Carter, 2017 WL 4043751, at *4 (declining to award attorney's fees where the only prejudice incurred was increased expenses and plaintiff was partially to blame for those expenses by electing to pursue default judgment, despite defendant's intent to set aside default).

> **B.  Motion for Default Judgment**

As the court has found good cause to set aside entry of default against Defendants Lamb, D. Saunders, W. Saunders, and Ferguson, motion for default judgment against them will be denied. Defendant Garza, however, has not moved to set aside the entry of default or challenged Superior Performers' motion for default judgment against him. Therefore, the court must determine whether default judgment against him is appropriate.

A clerk's entry of default does not entitle a party to default

11

judgment as a matter of right.  See Moradi, 673 F.2d at 727–28. Even where a "motion for default judgment is unopposed, the court must exercise sound judicial discretion to determine whether default judgment should be entered." United States v. Williams, No. 1:17-cv-00278, 2017 WL 3700901, at *1 (M.D.N.C. Aug. 25, 2017) (internal quotation marks omitted).

Default is not considered "an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Rather, a defaulted defendant is considered to have admitted the factual allegations — but not the conclusions of law — contained in the complaint. See Partington v. Am. Int'l Specialty Lines Ins. Co., 443 F.3d 334, 341 (4th Cir. 2006); Harris v. Blueridge Health Servs. Inc., 388 F. Supp. 3d 633, 637 (M.D.N.C. 2019).  Ultimately, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." J&J Sports Prods., Inc. v. Romenski, 845 F. Supp. 2d 703, 705 (W.D.N.C. 2012).

In order to impose default judgment, the moving party must first show that the defaulted party was properly served.  Harris, 388 F. Supp. 3d at 637–38.  Second, the court must evaluate the complaint to ensure that it states a legitimate cause of action.

12

See Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment where plaintiff failed to state a claim); JTH Tax, Inc. v. Grabert, 8 F. Supp. 3d 731, 741-42 (E.D. Va. 2014) (conclusory statements of fact are insufficient to support default judgment because defendants are not held to admit conclusions of law upon default); see also Romenski, 845 F. Supp. 2d at 705. "If the court determines that liability is established, the court must then determine the appropriate amount of damages. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations." Harris, 388 F. Supp. 3d at 638 (internal citation omitted).

### 1. Service of Process

Federal Rule of Civil Procedure 4(e)(1), which applies to service upon individuals, permits service that "follow[s] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The relevant North Carolina statute allows for service on an individual by, among other ways, "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat § 1A-1, Rule 4(j)(1)(c).

13

In this case, Superior Performers has provided evidence that it served Garza by depositing a copy of the civil summons and complaint with USPS for certified mailing to his address in Houston, Texas, return receipt requested. (Doc. 14-1.) Service of process was completed on December 26, 2019. (Id. at 6.) On this record, it appears that Superior Performers properly served Garza.[4]

### 2. Liability

Superior Performers alleges four causes of action against Garza: breach of contract, tortious interference with contract and business relations, unfair trade practices, and civil conspiracy. Each will be addressed in turn.

### a. Breach of contract

Under North Carolina law, the essential elements for a breach of contract claim are the existence of a valid contract and a breach of the terms of that contract. Eli Rsch., Inc. v. United Commc'ns Grp., LLC, 312 F. Supp. 2d 748, 755 (M.D.N.C. 2004) (citing Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)). A valid contract requires an agreement based on a meeting of the minds and sufficient consideration. Creech ex rel. Creech v. Melnik, 556 S.E.2d 587, 591–92 (N.C. Ct. App. 2001).

Here, Superior Performers has properly asserted the existence

---

[4] Garza also consented to removal to the district court on February 10, 2020. (Doc. 1 ¶ 7.)

of a contract between itself and Garza. (Doc. 28 ¶ 18(e); Doc. 36-1 at 20-37.) However, Superior Performers has failed to allege facts supporting a breach of that agreement. According to the amended complaint, Garza was party to an agreement which prohibited, among other items, "the establishment of any business relationship related to the sale of life insurance products with any [Superior Performers'] Agent." (Doc. 28 ¶ 20.) Looking at the contract itself, the relevant provision prohibits the forming of a business relationship with any "protected person," defined as an individual who "is or was in the immediately preceding 12 months an employee or Agent of [Superior Performers]." (Doc. 36-1 at 30, ¶ 7(d).) Garza allegedly violated that provision by "form[ing] a prohibited business relationship" with Defendant Thornton. (Doc. 28 ¶ 32.) Superior Performers provides no context regarding the nature of that prohibited business relationship, nor does it provide any facts supporting the existence of that relationship. The only evidence marshalled in support of Garza's alleged violation, contained in the declaration of Robert Craft, Superior Performers' Chief of Alliance Resource Center Operations, is that he resigned from Superior Performers on December 6, 2019 and began working with insurance carriers affiliated with Thornton on December 20, 2019. (Id. ¶ 25(a); Doc. 36 ¶ 14(a).)

On the face of the complaint, these facts alone do not suggest a breach of contract. Specifically, the complaint indicates that

15

Thornton terminated his professional relationship with Superior Performers in or around 2017 (see Doc. 28 ¶¶ 11, 13), while the earliest that Garza is alleged to have begun a business relationship with Thornton is December 2019 (id. ¶ 25(a)). On the face of the complaint, Garza did not violate the agreement because Thornton was not an agent of Superior Performers in December 2019. Further, on the terms of the contract itself, Garza did not violate the agreement because Thornton was not considered a "protected person" when the business relationship allegedly began.

As Superior Performers has not sufficiently alleged a breach of the terms of the agreement between Garza and itself, nor provided any facts indicating a breach, default judgment on this claim will be denied.[5]

### b. Tortious interference with contract and business relations

North Carolina case law refers to tortious interference with contract and tortious interference with business relations largely interchangeably. Superior Performers, Inc. v. Phelps, 154 F. Supp. 3d 237, 248 (M.D.N.C. 2016). The elements of a tortious interference claim are (1) a valid contract between the plaintiff and a third party, conferring rights on the plaintiff against the

---

[5] Although not clear on the face of the complaint, Superior Performers may also intend to allege that Garza breached the agreement by participating in the prohibited solicitation of Superior Performers' agents and employees. (See Doc. 28 ¶¶ 20, 22, 28, 32.) For reasons discussed in section (b), infra, this argument would fail.

third party; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third party not to perform; (4) the defendant acts without justification; and (5) causes actual damage to the plaintiff. Eli Rsch., 312 F. Supp. 2d at 756 (citing Embree Constr. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992)).

Superior Performers argues that Garza — although without mentioning him by name or otherwise distinguishing him from the other Defendants — tortiously interfered with contract and business relationships by "[s]olicitat[ing] [Superior Performers'] Agents and/or employees to join Thornton's organization." (Doc. 28 ¶¶ 22, 41.) However, despite naming multiple individuals who it believes were recruited away to Thornton's companies in violation of contractual agreements, Superior Performers fails to mention a single individual who may have been solicited by Garza. Rather, Superior Performers attributes specific recruitment efforts and the recruitment of specific individuals to Thornton (id. ¶ 26), Lamb (id. ¶ 32; Doc. 35 at 4), D. Saunders, W. Saunders (Doc. 36 at 5, 6), and Ferguson (Doc. 28 ¶ 53; Doc. 35 at 4). Without a single fact alleging Garza was somehow involved in prohibited recruitment efforts, the complaint cannot support default judgment against Garza for tortious interference with business relationships or contract. Therefore, Superior Performers' motion for default judgment will be denied in relation

17

to this claim.

                **c.    Unfair and deceptive trade practices**

Superior Performers brings causes of action for common law unfair competition and violation of North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA).

The tort of common law unfair competition is recognized in North Carolina "as an offense committed in the context of competition between business rivals." Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 697 (M.D.N.C. 2011) (quoting Henderson v. U.S. Fidelity & Guar. Co., 488 S.E.2d 234, 239 (N.C. 1997)). "The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money." Henderson, 488 S.E.2d at 240.

To establish a violation of the UDTPA, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice (2) that was in or affecting commerce and (3) proximately caused injury. Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 666–67 (M.D.N.C. 2013) (citing Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)). "An act or practice is unfair 'if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' and is deceptive 'if it has the capacity or tendency to deceive.'" Id. (quoting Ace Chem. Corp. v. DSI Transp., Inc., 446 S.E.2d 100, 106 (N.C. Ct. App. 1994)). "The determination of

18

whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000).

Superior Performers' complaint alleges that "each Defendant" – again, without mentioning Garza by name or distinguishing him from the other Defendants – engaged in unfair trade practices by tortiously interfering with contracts and business relationships and by disclosing confidential information. (Doc. 28 ¶ 46.) As discussed above, Superior Performers has failed to allege facts to support that Garza interfered with contracts and business relationships. Additionally, Superior Performers has failed to allege facts indicating that Garza disclosed any confidential information. At no point does Superior Performers indicate what, if any, confidential information was disclosed by Garza or to whom. Without any factual underpinnings whatsoever, the claimed disclosure of confidential information is a conclusory statement of fact insufficient to support default judgment. As such, Superior Performers' motion for default judgment on this claim will be denied.

### d. Civil conspiracy

Under North Carolina law there is no cause of action for civil conspiracy per se. Delk v. ArvinMeritor, Inc., 179 F. Supp. 2d 615, 628–29 (W.D.N.C. 2002). Rather, a plaintiff can state a claim

for wrongful acts done in furtherance of a conspiracy which caused them harm. Id. "This claim requires the showing of (1) an agreement between two or more persons (2) to do a wrongful act, (3) commission of some overt act by one member of the conspiracy in furtherance of the objectives, and (4) damage to the plaintiff as a result of the actions of the conspirators." Id. A civil conspiracy may be established by circumstantial evidence; however, sufficient evidence of the agreement must exist "to create more than a suspicion or conjecture." Id. (quoting Dickens v. Puryear, 276 S.E.2d 325, 337 (N.C. 1981)).

Superior Performers has failed to allege any specific facts relating Garza to this claim. Superior Performers' conclusory allegations that "the misconduct alleged . . . [was] pursuant to a common plan and scheme among Defendants," (Doc. 28 ¶ 52), and "each Defendant was acting as an agent of the others," (id. ¶ 56), do not sufficiently support that Garza was party to a conspiracy. (See also id. ¶ 28.) It is noteworthy that in establishing a claim for civil conspiracy, Superior Performers mentions Defendants Thornton, Lamb, and Ferguson by name and includes specific instances that support a finding of conspiracy as to them. (See id. ¶ 53.) The complaint lacks any similar factual basis in relation to Garza. A mere conclusory allegation that Garza is a party to a conspiracy is insufficient to support default judgment on this claim.

20

As the court has found default judgment to be unwarranted for each of the claims brought against Garza, it need not consider the appropriateness of the relief requested.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to set aside entry of default (Doc. 30) is GRANTED and Superior Performers' motion for default judgment (Doc. 34) is DENIED. Superior Performers' request for an award of its reasonable attorney's fees and costs associated with seeking entry of default is GRANTED. Superior Performers shall meet and confer with Defendants to attempt to informally resolve its request for attorneys' fees and costs, and if that is unsuccessful, it shall file its request to the court within thirty (30) days of the entry of this Order. Defendants shall file their response to Superior Performers' request, if any, within twenty (20) days thereafter.

Defendants shall file their responses to the complaint within twenty (20) days

                                        /s/   Thomas D. Schroeder
                                      United States District Judge

October 13, 2020