IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SUPERIOR PERFORMERS, INC. )
d/b/a NATIONAL AGENTS )
ALLIANCE, )
                                )
            Plaintiff, )
                                )
        v. )            1:20-cv-00123
                                )
JASON J. THORNTON, DORIAN K. )
SAUNDERS, WILLIAM N. SAUNDERS, )
GLENN A. LAMB, SHONDEL A. )
FERGUSON, and SANSON GARZA, )
                                )
            Defendants. )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This case involves a dispute over the enforcement of non-solicitation restrictions contained in independent contractors' employment contracts. Before the court is the second motion of Plaintiff Superior Performers, Inc. ("Superior Performers") for default judgment against the remaining Defendants, Dorian K. Saunders ("D. Saunders"), William N. Saunders ("W. Saunders"), Glenn A. Lamb, and Shondel A. Ferguson.[1] (Doc. 58.) For the reasons set forth below, the motion will be granted in part and denied in part.

I.   **BACKGROUND**

The facts alleged in the complaint, as relevant to the motion

---

[1] All claims against Defendants Jason J. Thornton and Sanson Garza have been voluntarily dismissed. (Docs. 47, 56.)

before the court, are as follows:

Superior Performers is an Independent Marketing Organization ("IMO") that recruits and trains sales agents for various insurance companies. (Doc. 28 ¶¶ 9, 10.) Defendants, through their business relationships with Superior Performers, are each party to an Agent Agreement with Superior Performers ("the agreement"). (Id. ¶ 18.) The agreement contains various provisions that prohibit Defendants from engaging in certain conduct, including the solicitation of current or recent Superior Performers agents ("the non-solicitation provision"). (See id. ¶¶ 20, 21.) The non-solicitation provision provides that for the duration of Defendants' professional relationships with Superior Performers and for a period of two years following (or, if engaged for less than one year, one year following) that

> the Independent Contractor shall not, directly or indirectly: (a) solicit for the provision of services or employment any Protected Person, (b) advise or recommend to any other person that they employ or solicit for provision of services any Protected Person, (c) encourage or advise such Protected Person to sever, discontinue or not renew any agreement or relationship to [Superior Performers] or its Affiliates, or (d) otherwise establish or seek to establish any business relationship with any such Protected Person relating to the sale of Life Insurance Products. "Protected Person" is any person who, at the time of the prohibited conduct . . . , is or was in the immediately preceding 12 months an employee or Agent of [Superior Performers] . . . .

(Doc. 36-1 at 30, ¶¶ 7.a., d.) Other provisions of the contract prohibit the disclosure of confidential information to third

2

parties or the use of such information by an agent for his own benefit.  (Doc. 28 ¶ 21.)

Based on information from publicly-available insurance licensing databases, Superior Performers alleges that Defendants Lamb and Ferguson resigned from its employ in late December 2019 after being recruited to an IMO affiliated with Defendant Jason Thornton.  (Id. ¶¶ 24-25.)  Around that same time, Lamb invited Ferguson and certain other Superior Performers agents to attend a recruitment meeting hosted by Thornton on behalf of his insurance agency, Partners Life, Inc. ("Partners Life").  (Id. ¶ 54.)

On December 20, 2019, Superior Performers brought this action in North Carolina state court.  (Doc. 1-1.)  On February 10, 2020, following the dismissal of non-diverse parties and with the consent of the remaining Defendants, Thornton removed the action to this court.  (Doc. 1.)  Following removal, Defendants Lamb, D. Saunders, W. Saunders, Ferguson, and Sanson Garza — at the time, proceeding *pro se* — failed to answer or otherwise plead within the seven-day limit of Federal Rule of Civil Procedure 81(c) and default was entered against them on February 24, 2020.  (Docs. 12, 15.)

After retaining counsel, Lamb, D. Saunders, W. Saunders, and Ferguson moved to set aside entry of default.  (Doc. 30.)  Shortly thereafter, Superior Performers moved for default judgment.  (Doc. 34.)  On October 13, 2020, this court granted Defendants' motion to set aside entry of default and denied Superior Performers'

3

motion for default judgment.[2]  (Doc. 48.)  Defendants were ordered to file their responses to Superior Performers' complaint within twenty days of that order.  (Id. at 21.)  Defendants failed to do so and, on November 25, 2020, default was again entered against them.  (Doc. 53.)  Defendants have made no response to the entry of default against them.  Superior Performers now moves, for a second time, for default judgment against Lamb, D. Saunders, W. Saunders, and Ferguson.  (Doc. 58.)  The motion is ready for resolution.  (See Doc. 59.)

## II.  ANALYSIS

### A.  Standard of Review

After default has been entered under Rule 55(a) of the Federal Rules of Civil Procedure, Rule 55(b)(2) authorizes the court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading.  However, a clerk's entry of default does not entitle a party to default judgment as a matter of right.  See J&J Sports Prods., Inc. v. Romenski, 845 F. Supp. 2d 703, 705 (W.D.N.C. 2012).  Even where a "motion for default judgment is unopposed, the court must exercise sound judicial discretion to determine whether default judgment should be entered."  United States v. Williams, No. 1:17-cv-00278, 2017

---

[2] The court also denied Superior Performers' unopposed motion for default judgment against Garza for failure to sufficiently allege a cause of action against him.  (See Doc. 48.)

4

WL 3700901, at *1 (M.D.N.C. Aug. 25, 2017) (internal quotation marks omitted).

Default is not considered "an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a defaulted defendant is considered to have admitted the factual allegations — but not the conclusions of law — contained in the complaint.[3] See Partington v. Am. Int'l Specialty Lines Ins. Co., 443 F.3d 334, 341 (4th Cir. 2006); Harris v. Blueridge Health Servs. Inc., 388 F. Supp. 3d 633, 637 (M.D.N.C. 2019). Ultimately, the court must "determine whether the well-pleaded allegations in the complaint support the relief sought." Romenski, 845 F. Supp. 2d at 705. In making this determination, courts in this circuit have applied a standard similar to that applied in the context of Federal Rule of Civil Procedure 12(b)(6). Silvers v. Iredell Cnty. Dep't of Soc. Servs., 2016 WL 427953, at *5 (W.D.N.C. Feb. 3, 2016) (collecting cases), aff'd, 669 F. App'x 182 (4th Cir. 2016); see also Cannon v. Exum, 799 F.2d 751 (4th Cir. 1986) ("A party by his

---

[3] In construing the allegations of the complaint, the court may consider documents incorporated by reference in or attached to the complaint. See Robinson v. Ladd Furniture, Inc., 995 F.2d 1064 (4th Cir. 1993) ("[T]he complaint includes any document which is attached to it as an exhibit, or incorporated into it by reference." (internal citations omitted)).

5

default, however, admits only the well pleaded allegations of fact. He is not held to admit facts that are not *well-pleaded* or to admit conclusions of law." (emphasis in original) (internal quotation marks omitted)).

In order to impose default judgment, the moving party must first show that the defaulted party was properly served. Harris, 388 F. Supp. 3d at 637-38. Second, the court must evaluate the complaint to ensure that it states a legitimate cause of action. See id.; see also Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment where plaintiff failed to state a claim). "[I]f the court determines that liability is established, the court must then determine the appropriate amount of damages. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations." Harris, 388 F. Supp. 3d at 638 (internal citation omitted).

As Defendants have defaulted and elected not to respond to the pending motion, the briefing on the issues before the court is limited to that offered by Superior Performers. The court's analysis is further informed only by its independent research necessary to the extent required to discharge its obligations under the standard of review involving a default. Given these constraints, caution should be exercised in attempting to draw

6

conclusions beyond the limited facts of this case.

## B. Service of Process

Federal Rule of Civil Procedure 4(e)(1), which applies to service upon individuals, permits service that "follow[s] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The relevant North Carolina statute allows for service on an individual by, among other ways, "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c).

In this case, Superior Performers has provided evidence that it properly served each Defendant. Lamb was served a copy of the civil summons and complaint via certified mail to his address in Houston, Texas, return receipt requested, on December 23, 2019. (Doc. 14-1.) On that same day, Ferguson was also served via certified mail, return receipt requested, to her address in Opeika, Alabama. (Doc. 14-4.) Both D. Saunders and W. Saunders were similarly served via certified mail at their address in St. Louis, Missouri on December 24, 2019. (Docs. 14-2, 14-3.) On this record, it appears that Superior Performers properly served Defendants.

7

**C. Liability**

To obtain a default judgment, Superior Performers must adequately state a cause of action against each Defendant. Superior Performers brings four causes of action against each Defendant: breach of contract, tortious interference with contract and business relations, unfair trade practices, and civil conspiracy. Each claim is addressed in turn.

**1. Breach of contract**

Under North Carolina law, the essential elements for a breach of contract claim are the existence of a valid contract and a breach of the terms of that contract. Eli Rsch., Inc. v. United Commc'ns Grp., LLC, 312 F. Supp. 2d 748, 755 (M.D.N.C. 2004) (citing Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)). A valid contract requires an agreement based on a meeting of the minds and sufficient consideration. See Creech ex rel. Creech v. Melnik, 556 S.E.2d 587, 591-92 (N.C. Ct. App. 2001).

Here, Superior Performers has properly asserted the existence of a contract between itself and each Defendant. (Doc. 28 § 18; Doc. 36-1 at 1-19, 38-91.) The issue is, first, whether the relevant contractual provisions are enforceable and, second, whether Superior Performers has sufficiently alleged that each Defendant breached the contract.

**a. Enforceability of the restrictive covenants**

The contractual provision at issue is a restrictive covenant,

8

specifically the non-solicitation provision that prohibits Defendants from engaging in the recruitment of current and recent Superior Performers agents.

Under North Carolina law, restrictive covenants pursuant to an employment agreement are carefully scrutinized. See Lab'y Corp. of Am. Holdings v. Kearns, 84 F. Supp. 3d 447, 458 (M.D.N.C. 2015). "To be enforceable under North Carolina law, a restrictive covenant must be (1) in writing; (2) made as part of an employment agreement; (3) based on valuable consideration; (4) reasonable as to both time and territory; and (5) designed to protect a legitimate business interest of the employer." Id. (citing Young v. Mastrom, Inc., 392 S.E.2d 446, 448 (N.C. Ct. App. 1990)). A covenant's restrictions can be no "wider in scope than is necessary" to protect an employer's legitimate business interests. Asheboro Paper & Packaging, Inc. v. Dickinson, 599 F. Supp. 2d 664, 671 (M.D.N.C. 2009) (quoting VisionAIR, Inc. v. James, 606 S.E.2d 359, 362 (N.C. Ct. App. 2004)). North Carolina courts have found that non-solicitation provisions "are generally more tailored and less onerous on employees' ability to earn a living" than similar non-competition provisions. Akzo Nobel Coatings Inc. v. Rogers, No. 11 CVS 3013, 2011 WL 5316772, at *10 (N.C. Super. Nov. 3, 2011); see Sandhills Home Care, L.L.C. v. Companion Home Care-Unimed, Inc., No. 15 CVS 3329, 2016 WL 4164460, at *8 (N.C. Super. Aug. 1, 2016) (business court) (citing United Lab'ys, Inc.

9

v. Kuykendall, 370 S.E.2d 375, 385 (N.C. 1988)); NFH, Inc. v. Troutman, No. 19 CVS 209, 2019 WL 5595166, at *12 (N.C. Super. Oct. 29, 2019) (business court); see also Aeroflow Inc. v. Arias, No. 11 CVS 1652, 2011 WL 2651567 (N.C. Super. July 5, 2011) (business court) (finding provision to be unenforceable as a non-compete provision but enforceable as a non-solicitation provision).

Here, the non-solicitation provision meets the requirements for enforceability. The Defendants' agreements were in writing, entered into as part of independent contractor agreements, and based on valuable consideration in the form of mutual promises to engage in a professional relationship. The restriction period of one to two years (depending on the length of the contractor's professional relationship with Superior Performers) is "well within the range that North Carolina courts have deemed reasonable." Superior Performers, Inc. v. Meaike, No. 1:13CV1149, 2014 WL 1412434, at *9 (M.D.N.C. Apr. 11, 2014) (hereinafter "Meaike I") (finding two-year restriction on solicitation to be reasonable, citing Triangle Leasing Co. v. McMahon, 393 S.E.2d 854 (N.C. 1990) and Kennedy v. Kennedy, 584 S.E.2d 328 (N.C. Ct. App. 2003)). Additionally, territorial restrictions that are not limited geographically but are instead employee-based – as are the restrictions here – have been upheld so long as the overall effect is reasonable. See Kennedy, 584 S.E.2d at 335 (citing Precision

10

_Walls, Inc. v. Servie_, 568 S.E.2d 267, 273-74 (N.C. Ct. App. 2002)). Here, because the relevant restrictions prevent Defendants from recruiting only Superior Performers' agents (or individuals who were agents within the preceding twelve months) for a period of one to two years following termination of their professional relationship with Superior Performers, the overall effect of these restrictions appears reasonable. See _Meaike I_, 2014 WL 1412434, at *4, *9 (discussing nearly identical provisions and finding provisions to be both temporally and geographically reasonable, noting that the latter are reasonable because they are employee-based).[4] These restrictions also protect Superior Performers' legitimate business interest in protecting its investment in training its agents, safeguarding its current employees' relationships with its clients, and preventing former employees from capitalizing on professional connections made by

---

[4] The _Meaike I_ court also found that the language "or its Affiliates" in the relevant provisions likely rendered them overly broad. See _id._ at *10-11. However, the court determined that this language was separable. _Id._ Although North Carolina courts apply a strict blue pencil approach, "North Carolina courts may specifically enforce divisible or separable sections of restrictive covenants while striking portions that are unenforceable" to render a provision reasonable. _Wells Fargo Ins. Servs. USA, Inc. v. Link_, 827 S.E.2d 458, 469-70 (N.C. 2019) (suggesting language separated by the word "or" may be considered separable). Ultimately, applying this blue pencil analysis, the _Meaike I_ court concluded that the provision, without the separable "or its Affiliates" language, was reasonable and enforceable. 2014 WL 1412434 at *10-11. Here, as in _Meaike I_, Superior Performers does not seek to enforce the "or its Affiliates" language.

11

virtue of their work with Superior Performers.[5]  See  Kennedy, 584
S.E.2d at 335 (finding agreement that prevented defendant from
soliciting plaintiff's "employees" for a period of three years
protected a legitimate business interest where employees "were a
valuable asset owned by plaintiff" and employees were an integral
part of the business); Aeroflow, 2011 WL 2651567, at *8 (finding
non-solicitation agreement applicable to "any customer, client,
patient, referral source, or contractor" who had done business
with plaintiff within one-year preceding defendant's termination,
effective for one year following his termination, to be designed
to protect a legitimate business interest).

As such, the non-solicitation provision at issue is
enforceable.

### b.  Contractual breaches

Having concluded that the parties had enforceable contractual
agreements, it must be determined whether Superior Performers has
sufficiently alleged breaches of those agreements.  Superior

---

[5] Although the use of the term "employees" in the non-solicitation
agreement is arguably broad, it is not evident that North Carolina courts
have taken issue with this term – or indeed, even addressed it – in the
context of similar non-solicitation agreements.  See, e.g., Kennedy, 584
S.E.2d at 335 (concluding non-solicitation provision that prevented
defendant from soliciting "employees" of a dental practice to be
reasonable and tailored to a legitimate business interest); Precision
Walls, 568 S.E.2d at 269, 273 (finding non-competition agreement, which
included a non-solicitation provision applicable to "any Company
employee" to be enforceable).  Insofar as this is not a contested issue
in the present case, the court looks no further than these cases to
permit enforcement on this record.

12

Performers appears to make multiple allegations of breach. First, it claims that each Defendant violated the agreement by entering into a business relationship with Thornton. Second, it makes specific allegations as to each Defendant. These arguments are addressed in turn.

### i.    Relationships with Thornton

Superior Performers first alleges that Defendants have each formed prohibited business relationships with insurance carriers affiliated with Thornton. (See Doc. 28 ¶¶ 25, 31.) As discussed in this court's prior opinion, however, on both the face of the complaint and by the terms of the agreements, affiliating with Thornton does not constitute a breach. (See Doc. 48 at 15-16.) According to the amended complaint, the agreements prohibit, among other items, "the establishment of any business relationship related to the sale of life insurance products with any [Superior Performers'] Agent." (Doc. 28 ¶ 20.) Looking at the contracts themselves, the non-solicitation provision prohibits the forming of a business relationship with any "protected person," defined as an individual who "is or was in the immediately preceding 12 months an employee or Agent of [Superior Performers]." (See, e.g., Doc. 36-1 at 12, ¶ 7.d.)

The complaint indicates that Thornton terminated his professional relationship with Superior Performers in or around 2017 (see Doc. 28 ¶¶ 11, 13), while the earliest that any Defendant

13

is alleged to have begun a business relationship with Thornton is December 2019 (id. ¶ 25).[6]  On the face of the complaint, Defendants did not violate their agreements because Thornton was not an agent of Superior Performers in December 2019.  Further, on the terms of the contract itself, Defendants did not violate the agreement because Thornton was not considered a "protected person" when the business relationship allegedly began.  As a result, Defendants' alleged relationships with Thornton are insufficient to state a breach of contract.

### ii.  Other breaches

Superior Performers alleges additional actions that may support a breach of contract claim.  In the amended complaint, it broadly alleges that Defendants "breached their Agent Agreements by [s]oliciting [Superior Performers]'[] Agents and by disclosing and/or otherwise using [Superior Performers]'[] confidential information."  (Doc. 28 ¶ 32.)  This is a conclusory statement of fact that is not admitted as true in default.  The court must therefore review the allegations made against each Defendant to determine whether a plausible breach of contract claim has been made.

---

[6] The complaint does not indicate the dates on which D. Saunders and W. Saunders allegedly began their relationships with Thornton-affiliated organizations.

Superior Performers alleges that Lamb breached his contract with Superior Performers by soliciting certain Superior Performers agents, including Ferguson, Bryant Marshall, and Brian Likins. (Doc. 28 ¶ 32.) The complaint specifically alleges that "in December 2019, Lamb invited . . . Likins and Defendant Ferguson to attend a recruitment meeting hosted by Thornton . . . on behalf of [his] insurance agency."[7] (Id. ¶ 54.) This allegation is sufficient to state a breach of contract.

According to the amended complaint, Lamb is party to an agreement that prohibits, among other items, "the solicitation of any Agent for the provision of services or employment; . . . advising or recommending to any other person that they employ or solicit for the engagement of the services of any Agent; [and] encouraging any Agent to discontinue his or her relationship with" Superior Performers. (Doc. 28 ¶ 20.) These prohibitions are reflected in Lamb's agreement with Superior Performers. (See Doc. 36-1 at 48, ¶ 7.d.) According to that agreement, Lamb was prohibited from soliciting any individual who "is or was in the immediately preceding 12 months an employee or Agent of [Superior Performers]" for the duration of Lamb's relationship with Superior

_____

[7] Although Likins provided an affidavit that details this recruitment effort in greater detail (see Doc. 35), the affidavit was neither attached to nor incorporated by reference in the amended complaint (see Doc. 28). Accordingly, the court did not consider this affidavit in determining Lamb's liability.

Performers and for a period of one to two years after the termination of that relationship. (Id. ¶¶ 7.a., 7.d.)

Here, Superior Performers has adequately alleged that in December 2019 – the same month that Lamb terminated his relationship with Superior Performers – Lamb attempted to recruit multiple Superior Performers agents to other insurance carriers. (Doc. 28 ¶ 54.) This is a breach of the non-solicitation provision. Superior Performers has thus plausibly pleaded that Lamb breached the agreement and default judgment on that claim will be rendered against him.

### (b) D. Saunders and W. Saunders

Superior Performers alleges that D. Saunders and W. Saunders breached the non-solicitation provision by forming a prohibited business relationship with one another, as well as with a third individual, Angela Clark. (Id. ¶ 32.) However, the amended complaint provides no context regarding the nature of that prohibited business relationship, nor does it provide any facts supporting the existence of that relationship. The complaint fails to even indicate when that relationship allegedly began. Rather, this allegation is a conclusory statement of fact that is insufficient to support default judgment. Therefore, default judgment on this claim against D. Saunders and W. Saunders is not appropriate.

16

### (c)  Ferguson

Superior Performers alleges that Ferguson breached the non-solicitation provision in that she was subject to Lamb's recruitment efforts. (Id.)  It further alleges that Ferguson later became involved in those efforts. (Id. ¶ 53.)  However, Superior Performers has pleaded no facts to support this allegation. Instead, it has alleged only that Lamb invited Ferguson to attend a recruitment meeting hosted by Thornton. (Id. ¶ 54.)  There are no allegations indicating that Ferguson herself engaged in any improper solicitation beyond Superior Performers' conclusory allegation.  As a conclusory statement of fact, the allegation in the amended complaint is insufficient to support a breach of contract claim against Ferguson.[8]

Although not clearly stated by Superior Performers, Ferguson may have breached the non-solicitation provision by forming a prohibited business relationship with Lamb in that they both joined the same insurance carrier after leaving Superior Performers.  The

---

[8] To the extent the allegation could be construed to indicate that Ferguson was attempting to form a business relationship with Lamb, who was a Superior Performers' agent, Lamb had not officially joined Thornton's organization at the time of the meeting.  The complaint alleges the date of the meeting as sometime in December 2019, but Lamb was employed with Superior Performers until December 19, 2019 and didn't begin work with Thornton's company until January 3, 2020. (Doc. 28 ¶¶ 25, 54.)  Without more, this allegation does not support the inference that Ferguson was aware that Lamb was planning to leave Superior Performers for Thornton's organization prior to the meeting, or that she was otherwise attempting to form a business relationship with him by attending the meeting.

17

pleadings indicate that on January 3, 2020 — less than one month after each resigned from Superior Performers — both Ferguson and Lamb appeared to be licensed with the same Thornton-affiliated insurance carrier. (Doc. 28 ¶ 25.c.) However, the amended complaint contains no additional details that would support a finding of breach, such as whether Ferguson and Lamb have direct interactions as part of their individual relationships with the new carrier or even what type of insurance product is sold by this new carrier. This threadbare allegation is therefore insufficient to support the conclusion that Ferguson and Lamb have formed a business relationship in violation of her contract. The motion for default judgment against Ferguson on this claim will be denied.

## 2. Tortious interference with contract and business relations

Superior Performers next brings claims for tortious interfere with contract and business relations against each Defendant.

North Carolina case law refers to tortious interference with contract and tortious interference with business relations largely interchangeably. Superior Performers, Inc. v. Phelps, 154 F. Supp. 3d 237, 248 (M.D.N.C. 2016). The elements of a tortious interference claim are (1) a valid contract between the plaintiff and a third party, conferring rights on the plaintiff against the third party; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third party not to perform;

(4) the defendant acts without justification; (5) the interference causes plaintiff actual damages. Eli Rsch., 312 F. Supp. 2d at 756 (citing Embree Constr. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992)).

Superior Performers alleges that "each Defendant has interfered with [Superior Performers]'[] contractual and business relationships" through "the Solicitation of [its] Agents and/or employees." (Doc. 28 ¶ 40.) These claims are identical to Superior Performers' breach of contract claims. As discussed above, Superior Performers has failed to adequately allege that D. Saunders, W. Saunders, or Ferguson engaged in prohibited solicitation. Therefore, default judgment on this claim cannot be rendered against them.

Even if this cause of action was adequately pleaded as to all Defendants, this claim would be barred by the economic loss doctrine. The economic loss doctrine "prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." Superior Performers, Inc. v. Meaike, No. 1:13CV1149, 2014 WL 5819826, at *7 (M.D.N.C. Nov. 10, 2014) (hereinafter "Meaike II") (quoting Lord v. Customized Consulting Specialty, Inc., 643 S.E.2d 28, 30 (N.C. Ct. App. 2007)). Therefore, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350 (N.C.

1978). Rather, tort claims are limited to those that are identifiable and distinct from the primary breach of contract claim. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 346-47 (4th Cir. 1998).

Superior Performers' tortious interference claims are based on Defendants' alleged solicitation of its agents. This same claim underpins Superior Performers' breach of contract claims. Accordingly, even if this claim were adequately pleaded, it would be barred by the economic loss doctrine's prohibition against claims that are not identifiable and distinct from the primary breach of contract claims. See also Meaike II, 2014 WL 5819826, at *7; Akzo Nobel, 2011 WL 5316772, at *20-21 (finding that a complaint lacked tort allegations sufficient to establish tortious interference claims that could be considered distinct from the primary breach of the restrictive covenants). The motion for default judgment on this claim will therefore be denied.

### 3. **Unfair and deceptive trade practices**

Superior Performers next brings causes of action for common law unfair competition and violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA").

The standard for violations of the UDTPA and common law unfair competition are not "appreciably different." BellSouth Corp. v. White Directory Publrs., Inc., 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999) (citing Carolina Aniline & Extract Co., Inc. v. Ray, 20

20

S.E.2d 59, 61–62 (N.C. 1942)). The tort of common law unfair competition is recognized in North Carolina "as an offense committed in the context of competition between business rivals." Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 697 (M.D.N.C. 2011) (quoting Henderson v. U.S. Fid. & Guar. Co., 488 S.E.2d 234, 239 (N.C. 1997)). "The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money." Henderson, 488 S.E.2d at 240. To establish a violation of the UDTPA, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice (2) that was in or affecting commerce and (3) proximately caused injury. Stack v. Abbott Lab'ys, Inc., 979 F. Supp. 2d 658, 666–67 (M.D.N.C. 2013) (citing Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)). "An act or practice is unfair 'if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' and is deceptive 'if it has the capacity or tendency to deceive.'" Id. (quoting Ace Chem. Corp. v. DSI Transp., Inc., 446 S.E.2d 100, 106 (N.C. Ct. App. 1994)). "The determination of whether an act or practice is an unfair or deceptive practice that violates [the UDTPA] is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000).

A "mere breach of contract, even if intentional," is not sufficient to sustain a claim under the UDTPA. Broussard, 155

F.3d at 347. Rather, a showing of "substantial aggravating circumstances" is required. Id. North Carolina courts "'differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law.'" Id. (quoting Hageman v. Twin City Chrysler-Plymouth Inc., 681 F. Supp. 303, 306-07 (M.D.N.C. 1988)).

Here, as with the prior two claims, Superior Performers has failed to allege, beyond conclusory statements of fact, that D. Saunders, W. Saunders, or Ferguson engaged in conduct that would constitute breaches of their agreements or other unfair trade practices. In relation to Lamb, Superior Performers has alleged that he breached his contractual agreement. However, Superior Performers has set out no substantial aggravating factor that would elevate this breach of contract into a UDPTA or unfair competition claim. As such, Superior Performers' motion for default judgment on this claim will be denied as to each Defendant.

### 4. Civil conspiracy

Superior Performers lastly brings claims for civil conspiracy against all Defendants and alleges that all Defendants, along with Thornton, engaged in misconduct pursuant to a common scheme.

"Under North Carolina law there is no cause of action for civil conspiracy per se." Delk v. ArvinMeritor, Inc., 179 F. Supp.

2d 615, 628-29 (W.D.N.C. 2002). Rather, a plaintiff can state a claim for wrongful acts done in furtherance of a conspiracy which caused it harm. Id. "This claim requires the showing of (1) an agreement between two or more persons (2) to do a wrongful act, (3) commission of some overt act by one member of the conspiracy in furtherance of the objectives, and (4) damage to the [p]laintiff as a result of the actions of the conspirators." Id. "[L]iability attaches as a result of the wrongful act committed, not the agreement itself." Eli Rsch., 312 F. Supp. 2d at 763 (citing Dickens v. Puryear, 276 S.E.2d 325, 337 (N.C. 1981)). Thus, "the existence of an underlying tortious act is the key to establishing a civil conspiracy," id., and "liability attaches only if one of the conspirators is liable for an underlying tort," Riley v. Dow Corning Corp., 767 F. Supp. 735, 740 (M.D.N.C. 1991). Although a civil conspiracy may be established by circumstantial evidence, sufficient evidence of the agreement must exist "to create more than a suspicion or conjecture." Dickens, 276 S.E.2d at 337. "[A] plaintiff cannot use the same facts to form both the basis for a claim for conspiracy to commit certain torts and the basis for claims based on the underlying tort." Jacobs Vehicle Sys., Inc. v. Yang, No. 1:12CV00181, 2013 WL 4833058, at *11 (M.D.N.C. Sept. 10, 2013) (citing Norman v. Nash Johnson & Sons' Farms, Inc., 537 S.E.2d 248, 265 (N.C. Ct. App. 2000)).

23

The amended complaint charges that "the misconduct alleged . . . was . . . the result of and pursuant to a common plan and scheme among Defendants to harm [Superior Performers] and poach [Superior Performers]'[] Agents, employees, clients, and business." (Doc. 28 ¶ 52.) Superior Performers further alleges that "Lamb agreed with Thornton to engage in specific recruiting activities" and that "Ferguson similarly agreed with Lamb and Thornton to engage in specific recruiting activities." (Id. ¶ 53.) In support of these allegations, Superior Performers details Lamb's December 2019 recruiting efforts – the same allegations that support its breach of contract claim against him. (Id. ¶ 54.) Beyond these allegations, the complaint also shows that Lamb and Ferguson were licensed with insurance carriers affiliated with Thornton shortly after leaving Superior Performers. (Id. ¶ 25.)

These allegations are insufficient to support a claim of civil conspiracy, as the allegations supporting the claim are largely conclusory. Indeed, Superior Performers makes no allegation regarding the actions of D. Saunders and W. Saunders whatsoever. Instead, it relies on its generalized assertion that "Defendants" engaged in a common plan and scheme in order to support its claim. This is insufficient to state a civil conspiracy claim against these Defendants.

In relation to Lamb and Ferguson, the allegations are somewhat more specific. Superior Performers alleges that both agreed with

24

Thornton to engage in "specific recruiting activities" targeted at Superior Performers' agents in violation of their contracts. The basis for this conspiracy claim, therefore, is Lamb's breach of contract.[9] However, in support of this claim, Superior Performers details Lamb's December 2019 recruitment efforts, the same facts that underlie the breach of contract claim against him. Superior Performers cannot rely on the same facts to establish both the underlying tort and the conspiracy to commit that tort, but rather must make an additional showing to support the conspiracy claim.[10] See Jacobs Vehicle, 2013 WL 4833058, at *11. The only other facts that may be suggestive of a conspiracy between Ferguson, Lamb, and Thornton is that both Ferguson and Lamb were licensed with insurance carriers affiliated with Thornton shortly after leaving Superior Performers. This fact alone, or even in conjunction with Lamb's December 2019 recruitment efforts, does not indicate a conspiracy beyond mere suspicion and conjecture. As such, default judgment on this claim will be denied.

### D. Remedy

---

[9] As discussed supra, the pleadings do not sufficiently allege that Ferguson breached the agreement.

[10] Further, it is an open question in North Carolina as to whether a breach of contract can support a claim of civil conspiracy. Bennett v. Bennett, No. 18 CVS 48, 2019 WL 1262472, at *11 n.8 (N.C. Super. Mar. 15, 2019) (business court); see also Krawiec v. Manly, No. 15 CVS 1927, 2016 WL 374734, at *13 (N.C. Super. Jan. 22, 2016) (suggesting that breach of contract cannot serve as an underlying tort to support a civil conspiracy claim), aff'd as modified and remanded, 811 S.E.2d 542 (N.C. 2018).

Having established that default judgment may be rendered on the breach of contract claim against Lamb, the court must determine the appropriate remedy. Superior Performers has requested both a permanent injunction and a grant of attorneys' fees. (Doc. 59 at 11-16.) Each is considered in turn.

### 1. Permanent injunction

Superior Performers asks that defaulting Defendants – which, after consideration of the claims, is just Lamb – be permanently enjoined from committing further violations of the non-solicitation provision of the agreement. (Doc. 59 at 3.) As the court has already concluded that Lamb breached the non-solicitation provision, the issue is whether an injunction prohibiting further such breaches is appropriate.

A party seeking a permanent injunction must first demonstrate success on the merits. Mayor of Balt. v. Azar, 973 F.3d 258, 274 (4th Cir. 2020). Once success has been demonstrated, to determine whether to grant a permanent injunction, the court looks to the following four factors: (1) that the plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391

26

(2006). The decision to grant or deny permanent injunctive relief is an act of discretion by the court. <u>Azar</u>, 973 F.3d at 274. Pursuant to Federal Rule of Civil Procedure 65, if the court determines that permanent injunctive relief is appropriate, the injunction must describe with reasonable detail the acts prohibited. <u>Senderra RX Partners, LLC v. Blue Cross Blue Shield of N.C.</u>, No. 1:18-CV-871, 2019 WL 9633641, at *3 (M.D.N.C. May 7, 2019). "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." <u>Schmidt v. Lessard</u>, 414 U.S. 473, 476 (1974).

In this case, the grant of default judgment against Lamb for breach of contract demonstrates success on the merits. As such, the court must consider the four equitable factors identified by the Supreme Court to determine the appropriateness of injunctive relief. First, Superior Performers has demonstrated that it will suffer irreparable injury in the absence of a permanent injunction as Lamb has solicited its agents as part of a competing business, thus causing a loss of business and undermining Superior Performers' investment in its agents. (<u>See</u> Doc. 36 ¶ 7.) It also appears that absent an injunction, Lamb may continue to solicit Superior Performers agents and that an injunction is necessary to enforce their agreement. (<u>See</u> Doc. 60 (showing Lamb continues to engage in recruiting and promotional efforts for Partners Life).)

27

Second, monetary damages are inadequate to compensate for the injury sustained because these damages are not calculable with sufficient certainty. See Meaike I, 2014 WL 1412434, at *14. The types of harm alleged – the loss of employees to a competing business, their relationships with customers, and Superior Performers' investment in them – are intangible and difficult to calculate mathematically, particularly in light of the future harm Superior Performers may sustain from possible future breaches. See JTH Tax, Inc. v. Boone, No. 2:09CV69, 2009 WL 10689518, at *6 (E.D. Va. May 7, 2009); Controversy Music v. Mason, No. 5:09-CV-488-BR, 2010 WL 2607229, at *4 (E.D.N.C. June 24, 2010). Third, in balancing the likelihood of harm to Superior Performers with the harm to Lamb should an injunction be granted, it is clear that the interest weighs in favor of Superior Performers. Lamb has breached and may continue to breach the non-solicitation provisions of his agreement with Superior Performers. The issuance of a permanent injunction merely requires Lamb to adhere to the contractual provisions to which he is already bound. Further, the permanent injunction does not prevent Lamb from working in the sale of life insurance products; he just must simply refrain from prohibited recruitment efforts ancillary to that business, as required by his agreement. Finally, with regard to the public interest, a permanent injunction would serve to enforce the agreement, as well as discourage other agents from violating their

28

agreements. Accordingly, the factors weigh in favor of the entry

of a permanent injunction.

Superior Performers asks that the court extend the duration

of the injunction beyond the expiration date of the non-

solicitation provision identified in the agreement, such that the

injunction would extend two years from the date of this opinion.

But the North Carolina authority cited does not directly support

this request.[11]   Moreover, although some courts have exercised

their discretionary equitable powers to extend the duration of a

restrictive covenant, these decisions are typically made in the

context of a record that demonstrates a need for such an extension.

See, e.g., TEKsystems, Inc. v. Bolton, No. CIV.A. RDB-08-3099,

2010 WL 447782, at *9-10 (D. Md. Feb. 4, 2010) (restrictive

covenant expired prior to court's decision); Overholt Crop Ins.

Serv. Co. v. Travis, 941 F.2d 1361, 1372 (8th Cir. 1991) (full,

unimpeded duration of non-compete was required to effectuate

appropriate transition to new sales representative); Premier

Indus. Corp. v. Texas Indus. Fastener Co., 450 F.2d 444, 448 (5th

Cir. 1971) (requiring competitor to abide by terms of employee's

---

[11] Superior Performers cites Precision Walls, 568 S.E.2d at 269, for the
proposition that "the covenant not to compete . . . automatically
extended one day for each day defendant was in violation of the
covenant." (Doc. 59 at 14.) However, that proposition was not a
statement of law, but rather described an extension provision explicitly
contained in the parties' non-compete agreement. See Precision Walls,
568 S.E.2d at 269. It is not clear from that decision whether an
equitable extension was granted. See id.

non-compete agreement beyond the time specified in the agreement because competitor had the continual benefit of his services in breach of the agreement for over a year); Padco Advisors, Inc. v. Omdahl, 185 F. Supp. 2d 575, 578 (D. Md. 2002) (extending duration of non-compete agreement to account for four-month period in which employee was performing duties in breach of his non-compete agreement).

Here, while the agreement before the court contains an extension provision, (see Doc. 36-1 at 51 ¶ 10 ("The period of restrictions . . . contained in Paragraph 7 shall be extended by the same period of time that the Independent Contractor is in violation of Paragraph 7."), Superior Performers has failed to establish the period of time that Lamb was in violation of the non-solicitation provision. Thus, the grant of an extension based upon that contractual provision lacks a factual record and might serve to extend it unreasonably if, for example, there was a period of time that Lamb actually complied with his obligations. Certainly, the only definite breach that Superior Performers has established is Lamb's attempted recruitment of certain agents in December 2019. What is more, the provision as written is currently in effect and will not expire until December 2021. On the limited record before the court, an extension of the restrictive period beyond December 2021 does not appear warranted, and Superior Performers' request will be denied.

A permanent injunction will therefore be entered against Lamb which prohibits him, in accordance with the provisions of the non-solicitation clause, from (1) soliciting for the provision of services or employment any person who, at the time of the conduct or within the preceding 12 months, is/was an agent of Superior Performers; (2) advising or recommending to any other person that they employ or solicit for the provision of services any person who, at the time of the conduct or within the preceding 12 months, is/was an agent of Superior Performers; (3) encouraging or advising any person who, at the time of the conduct or within the preceding 12 months, is/was an agent of Superior Performers to sever, discontinue, or not renew any agreement or relationship with Superior Performers; and (4) otherwise establishing or seeking to establish any business relationship relating to the sale of life insurance products with any person who, at the time of the conduct or within the preceding 12 months, is/was an agent of Superior Performers. The permanent injunction shall be in effect until the natural expiration of the non-solicitation provision as defined by the agreement – namely, December 2021.

### 2. Attorneys' fees

Superior Performers also seeks attorneys' fees and costs incurred to enforce its agreements. (Doc. 59 at 15.) It argues that an award of attorneys' fees is permitted by North Carolina law.

31

Under North Carolina law, "a successful litigant may not recover attorney's fees, whether as costs or as an item of damages," even if provided by contract, "unless such a recovery is expressly authorized by statute." Stillwell Enters., Inc., v. Interstate Equip. Co., 266 S.E.2d 812, 814 (N.C. 1980). "No express statutory authority permits an award of attorney's fees in [a] breach of contract case," Parker Excavating, Inc. v. JOMCO Contracting, LLC, No. 1:19-CV-00062-MR, 2020 WL 1821059, at *3 (W.D.N.C. Apr. 10, 2020) (quoting Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc., 545 S.E.2d 745, 752 (N.C. App. Ct. 2001)), and Superior Performers does not otherwise point to a statutory authority that would permit a recovery of attorneys' fees in relation to its breach of contract action.[12]    Accordingly, attorneys' fees cannot be rendered on this claim.

### 3. Entry of judgment

"Federal Rule of Civil Procedure 54(b) allows a district court dealing with multiple claims or multiple parties to direct the entry of final judgment as to fewer than all of the claims or parties. . . ." Curtiss–Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 3 (1980).  In order to enter judgment pursuant to Rule 54(b), "[f]irst, the district court must determine whether the judgment

---

[12] Although Superior Performers relies upon N.C. Gen. Stat. § 75-16.1 to support an award of attorneys' fees, this statute applies to claims made under the UDTPA.  Because default judgment on this claim was denied, this statute is inapposite.

is final." Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335 (4th Cir.1993). "[A] judgment must be final in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." Id. (internal citation and quotation marks omitted). "Second, the district court must determine whether there is no just reason for the delay in the entry of judgment." Id. In determining whether there are no just reasons to delay, "a district court must take into account judicial administrative interests as well as the equities involved." Curtiss-Wright, 446 U.S. at 8. The Fourth Circuit has counseled courts to take into account the following factors, where applicable:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Braswell, 2 F.3d at 1335-36.

Here, entry of default against Lamb on Superior Performers' breach of contract claim constitutes a final judgment against him. Further, as Lamb's liability on this claim will be fully decided upon entry of default judgment, there is no just reason to delay entry of judgment. At this point, Lamb has twice had default

33

entered against him on this claim, and he has made no response to Superior Performers' current motion for default judgment against him. The breach of contract claim is logically separate from Superior Performers' remaining claims against Lamb and other Defendants, and therefore does not present a risk of inconsistent judgments. This risk is further belied by the fact that all other Defendants are currently in default and are not actively defending against Superior Performers' claims. As such, entry of judgment pursuant to Rule 54(b) is proper here.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the motion for default judgment is GRANTED IN PART and DENIED IN PART as follows: Default judgment is GRANTED in relation to Superior Performers' claim for breach of contract against Lamb and is otherwise DENIED.

IT IS FURTHER ORDERED that Lamb is PERMANENTLY ENJOINED from further breaches of the non-solicitation clause of his agreement with Superior Performers, effective until the natural expiration of the non-solicitation clause on December 19, 2021. Pursuant to this injunction, Lamb is hereby prohibited from:

(1) soliciting for the provision of services or employment any person who, at the time of the conduct or within the preceding 12 months, is/was an agent of Superior Performers;

(2) advising or recommending to any other person that they employ or solicit for the provision of services any person who, at the time of the conduct or within the preceding 12 months, is/was an agent of Superior Performers;

(3) encouraging or advising any person who, at the time of the conduct or within the preceding 12 months, is/was an agent of Superior Performers to sever, discontinue, or not renew any agreement or relationship with Superior Performers; and

(4) otherwise establishing or seeking to establish any business relationship relating to the sale of life insurance products with any person who, at the time of the conduct or within the 12 preceding months, is/was an agent of Superior Performers.

A judgment against Defendant Lamb in conformance with this Order will be issued.

/s/   Thomas D. Schroeder
United States District Judge

May 27, 2021